TERRENCE MCMAHON ET AL. *v.* BOARD OF ZONING APPEALS OF THE CITY OF NEW HAVEN ET AL.

BALDWIN, INGLIS, O'SULLIVAN, QUINLAN and WYNNE, Js.

Argued October 7—decided December 1, 1953

*George J. Grady* and *William Dimenstein,* for the appellants (plaintiffs).

*Herbert L. Emanuelson,* with whom was *Jerome Hershey,* for the appellee (defendant Cott Beverage Corporation); on the brief were *George G. DiCenzo,* corporation counsel, and *John Barclay,* assistant corporation counsel, for the appellee (defendant city).

BALDWIN, J. The defendant Cott Beverage Corporation, hereinafter referred to as Cott, appealed to the defendant board of zoning appeals of New Haven from the refusal of the building inspector to permit the use of certain of its premises for business purposes. The board overruled the inspector, and the plaintiffs, who were residents and property owners nearby, appealed to the Court of Common Pleas. From a judgment sustaining the board the plaintiffs have appealed to this court.

Error is assigned in the finding. The court was undoubtedly trying to adopt the procedure suggested in *Cohen* v. *Board of Appeals on Zoning,* 139 Conn. 450, 453, 94 A.2d 793. While the procedure was not followed in all respects, no harm was thereby done to the plaintiffs. One further claim made in connection with errors assigned in the finding is that the statements of counsel at the hearing before the board should not be considered as statements of fact because they are not competent evidence. The procedure before the board was informal. Statements of counsel made in open, public hearing, where they are subject to question and contradiction from the opposition, are entitled to such weight and credence as the board deems them worthy to receive. This claim of error is without merit. *Parsons* v. *Board of Zoning Appeals,* 140 Conn. 290, 293, 99 A.2d 149.

The record discloses the following situation. Cott owns a plant fronting on Rowe Street and located at the northwest corner of that street and Chatham Street in New Haven. The plant was formerly owned and operated by the Sagal-Lou Products Company and the General Ice Cream Corporation. Within the block bounded by Rowe, Chatham, Ferry and Lombard Streets there are five or six dwellings, and the rest of the land is used for business purposes. The land fronting on Ferry Street, which is parallel with and west of Rowe Street, is zoned business A to a substantial depth. The Cott plant, however, is located in a residence B zone and therefore is a nonconforming use. It was in existence and operation as a dairy prior to the adoption of the zoning ordinance. In 1928, an application to the board of zoning appeals to add a substantial addition to the plant as it then stood, in order that it might extend its business, was approved. Cott purchased the entire plant in 1946. It employs about 200 people and represents an investment of over a million dollars. West of the plant on Chatham Street are premises designated as 215 Chatham Street. The rear of these premises, which are zoned residence B, abuts the rear of the Cott plant. Cott also owns a lot fronting on Ferry Street. There is a driveway leading to Chatham Street from the rear of the Ferry Street lot. The lot and the driveway are located in a business A zone.

Prior to 1948, trucks came into the plant through an entrance on Rowe Street and went out through an entrance on Chatham Street. This arrangement was unsatisfactory because it necessitated double parking and created traffic congestion on Rowe and Chatham Streets. It was inconvenient because it interfered with the flow of truck traffic through the plant. To alleviate the situation, in 1948 Cott ac-

quired the Ferry Street property and the Chatham Street driveway. In 1950, Cott purchased the premises designated as 215 Chatham Street, on which there is a two-and-one-half-story residential frame building presently occupied by Cott employees. There is an area 64 by 53.3 feet in the rear which Cott proposed to use for business purposes. This plot of land is adjacent to and between the Ferry Street property and the Cott plant and can be reached from Ferry and Chatham Streets. In 1951, Cott sought permission from the building inspector to erect a shed on a portion of this plot for the storage of bottles, and to use the Ferry Street property and the driveway to Chatham Street for motor vehicle transportation and the handling of storage containers and bottled products. The building inspector denied the request because it constituted an extension of a nonconforming use into a more restricted zone and because the transportation and handling of bottled products on these premises was offensive by reason of noise and vibration. Cott appealed to the board of zoning appeals from the inspector's decision.

The board concluded that the acquisition of the driveways to Chatham and Ferry Streets did away with the congestion of traffic on Rowe and Chatham Streets and that the uses sought were reasonable, proper and essential to Cott's business and would "not create or add any more discomfort to the residents in the vicinity than they already have been accustomed to" from the operation of a permissible nonconforming use. It further concluded that the denial of the appeal would not stop the noise complained of, that the changes sought would be beneficial to the residents in the vicinity as well as to Cott because they would alleviate the traffic conges-

tion on Rowe and Chatham Streets, of which the plaintiffs complained, and that if the appeal were denied Cott would suffer a great hardship which would retard production and transportation and affect the value of the investment and the employment of 200 people. The net effect of the board's decision was the extension of a nonconforming use to a lot area 64 by 53.3 feet adjacent to and in the rear of the Cott plant and a holding that the transportation and handling of storage containers and bottled products, so far as the use of the driveways to Chatham and Ferry Streets was concerned, was not in violation of the ordinance.

We have frequently asserted, as a fundamental proposition, that the decisions of zoning authorities are to be overruled only when it is found that they have not acted fairly, with proper motives, and upon valid reasons. *Mallory* v. *West Hartford,* 138 Conn. 497, 505, 86 A.2d 668; *First National Bank & Trust Co.* v. *Zoning Board of Appeals,* 126 Conn. 228, 237, 10 A.2d 691. "Where it appears that an honest judgment has been reasonably and fairly exercised after a full hearing, courts should be cautious about disturbing the decision of the local authority." *Kutcher* v. *Town Planning Commission,* 138 Conn. 705, 710, 88 A.2d 538. The burden of overthrowing the decision of this board rests squarely upon the plaintiffs. *DeFelice* v. *Zoning Board of Appeals,* 130 Conn. 156, 164, 32 A.2d 635; *Perdue* v. *Zoning Board of Appeals,* 118 Conn. 174, 178, 171 A. 26.

The Ferry Street property and the driveway from the rear of it to Chatham Street are in a business A zone. The ordinance forbids, in a business zone, "[a]ny trade, business or industry that is noxious or offensive by reason of the emission of . . . noise or vibration." New Haven Zoning Ordinance (1951)

§§ 1015 (1), 1016 (3). The plaintiffs complain that Cott's operation causes excessive noise and vibration. We first consider this complaint as addressed to the use of the property which lies within a business A zone. The question before the board under the ordinance was whether the proposed use violated the ordinance. It was a question of the reasonableness of the use and involved an issue of fact. *Saporiti* v. *Zoning Board of Appeals*, 137 Conn. 478, 483, 78 A.2d 741. There had been a dairy plant on the northwest corner of Rowe and Chatham Streets since sometime before the adoption of the original ordinance. As long ago as 1928, it had been enlarged with the approval of the zoning authorities. The proposed use of the recently acquired Ferry Street property would do away with traffic congestion and double parking on Rowe and Chatham Streets. Henceforth, trucks going to and coming from the plant would use the Ferry Street premises and the Chatham Street driveway. The board found that this would benefit both the plaintiffs and Cott. The noise and the vibration would not be increased by such use, nor would they be eliminated by preventing it. The conclusion that the proposed use was reasonable and proper and, in effect, not in violation of the ordinance was one that the board could legally reach.

The action of the board in granting a variance so as to allow the small area located in the rear of the premises purchased by the company and known as 215 Chatham Street to be used for business presents a somewhat different question. This is because the powers of the board to take such action are more closely circumscribed. The ordinance provides that, "[w]here there are practical difficulties or unnecessary hardships in the way of carrying out the strict

letter of any provision of [the] Ordinance, or where the effect of the application of the Ordinance is arbitrary, the Board of Zoning Appeals [has] power . . . to vary any such provision in harmony with its general purpose and intent so that the . . . general welfare may be secured and substantial justice done." New Haven Zoning Ordinance (1951) § 1033(7). The purpose of a board of appeals is to keep the law running on an even keel. Its function is to vary, by the exercise of legal discretion and within the limits stated in the ordinance, the application of the strict letter of the ordinance in cases that have real merit, so that the spirit and purpose of the general plan may be effectuated. *St. Patrick's Church Corporation* v. *Daniels,* 113 Conn. 132, 139, 154 A. 343; *Nielsen* v. *Board of Appeals on Zoning,* 129 Conn. 285, 289, 27 A.2d 392; *Lathrop* v. *Norwich,* 111 Conn. 616, 620, 151 A. 183; Baker, Legal Aspects of Zoning, p. 76. This power must be exercised sparingly. *Gunther* v. *Board of Zoning Appeals,* 136 Conn. 303, 309, 71 A.2d 91; *Grady* v. *Katz,* 124 Conn. 525, 529, 1 A.2d 137. The power and function of the board can be called into operation if one or the other of two conditions is found to exist, that is, if the strict application of the ordinance is arbitrary or if practical difficulties or unnecessary hardships result.

Cott's premises were in existence as a business operation before the original ordinance was passed. They were included in a residence zone as a nonconforming use. It is true, as the plaintiffs allege, that one of the recognized policies of zoning is to reduce nonconforming uses to conformance as speedily as possible. *Thayer* v. *Board of Appeals,* 114 Conn. 15, 23, 157 A. 273. The zoning authorities of New Haven, however, for reasons best known to them, chose not to pursue this course. In 1928, as pre-

viously stated, they approved a substantial extension of the nonconforming use. Ordinarily, businesses either grow or shrivel up. They seldom stand still. This one grew. It now employs more than 200 people and represents an investment of over a million dollars. Financial loss which might result from denying a necessary variance is not, in and of itself, a hardship which justifies relief. It is, however, a factor to be considered by the board. *Strain* v. *Mims,* 123 Conn. 275, 286, 193 A. 754; *First National Bank & Trust Co.* v. *Zoning Board of Appeals,* 126 Conn. 228, 238, 10 A.2d 691.

The diminutive size and the peculiar location of the area for which Cott seeks this variance, as well as the purpose of seeking it, are factors which speak out eloquently in support of the board's conclusion. The plot of land involved is less than one-tenth of an acre in extent. It is adjacent to and directly in the rear of Cott's plant. It abuts a business zone. It is to be used, in part, in connection with the rearrangement of the flow of truck traffic in and out of the plant, a rearrangement which the board found would improve the traffic conditions on Rowe and Chatham Streets. In zoning, an important consideration is the adaptability of particular land to a particular use. *Corthouts* v. *Newington,* 140 Conn. 284, 289, 99 A.2d 112; Bassett, Zoning, p. 124; Metzenbaum, Law of Zoning, p. 7; see *Kutcher* v. *Town Planning Commission,* 138 Conn. 705, 710, 88 A.2d 538. It is inconceivable that this land can ever be used for residential purposes. It is adapted to and needed for business. It would work an unnecessary hardship and be arbitrary in the extreme to require that this little piece of land be continued in a residential zone.

The plaintiffs argue that a variance cannot be granted unless it is in harmony with the general pur-

pose and intent of the ordinance. *Devaney* v. *Board of Zoning Appeals,* 132 Conn. 537, 541, 45 A.2d 828. The record indicates, however, that the whole general area in which the Cott plant is located is in a fluid state. *Hertzsch* v. *Zoning Board of Appeals,* 137 Conn. 599, 603, 79 A.2d 767. It is bounded by an industrial area along the main line of the New York, New Haven and Hartford Railroad on the north; by the Quinnipiac River, the shores of which are in large part zoned for industry, on the east and south; and by the Mill River, the shores of which are completely zoned for industry, on the west. About one-half of the total area is zoned for residence B. The remainder is zoned for residence C and business in about equal proportions. An industrial zone, a whole city block in extent, is situated almost in the center. A conclusion that the tendency of this whole neighborhood is toward business and industry is inescapable. Confining the Cott plant to the area it presently occupies may drive it to another location but will not stop or turn the current of development which now appears to be flowing so strongly toward business and industry. This was recognized long ago when permission was granted to enlarge the Cott plant. The granting of the variance by the board does not do violence to the general purpose and intent of the zoning ordinance.

The hardship complained of must arise directly out of the application of the ordinance to circumstances or conditions beyond the control of the party involved. *Misuk* v. *Zoning Board of Appeals,* 138 Conn. 477, 481, 86 A.2d 180. That is true in this case. What Cott seeks will not benefit Cott alone. The plot of land which now lies in a residential zone is needed to join the rear of the Cott plant to the Ferry and Chatham Street entrances. The traffic condition

about which the neighbors have complained would then be improved. But Cott cannot use this plot because, through circumstances and conditions over which it has no control, the ordinance prevents it. These circumstances and conditions exist because the zoning authorities created a business zone which comes to within a few feet of Cott's premises and, at the same time, left those premises as a nonconforming use in a residence zone.

In deciding whether a relaxation of zoning regulations in a given situation is warranted, a board of appeals must inevitably weigh considerations of public interest against individual interest. *Torello* v. *Board of Zoning Appeals,* 127 Conn. 307, 311, 16 A.2d 591. This board found that a relaxation of the strict letter of the regulations would serve both. We cannot hold that the court was in error in sustaining the board.

There is no error.

In this opinion O'SULLIVAN and WYNNE, Js., concurred.

QUINLAN, J. (dissenting). I cannot disagree with the basic principles cited in the majority opinion with reference to the limitations upon the power of this court in the review of an administrative decision, but I dispute the manner of their application by my associates to the situation before us. The case is a typical illustration of a problem confronting municipalities where zoning ordinances were adopted twenty-five years ago and have not been followed by a thorough resurvey and by amendment. Apparently the board has taken refuge in a feeling of security that its actions would not be considered an abuse of its powers and that the hardship found by it was sufficient in law. In reality, what has been

done, especially since it pertains to a nonconforming use, is legislation and an arrogation of the powers of the zoning commission of the city of New Haven.

If the variance is to be justified at all, it must be by the invocation of the power granted by subdivision (7) of § 1033 of the New Haven zoning ordinance. *Gunther* v. *Board of Zoning Appeals,* 136 Conn. 303, 309, 71 A.2d 91. This section authorizes the granting of a variance in cases of practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the ordinance. The conclusion that to deny the application would involve a hardship to Cott rests upon the individual inconvenience to Cott with a stressing of the economic disadvantage. The ordinance provides that a variance must be "in harmony with its general purpose and intent so that the public health, safety and general welfare may be secured and substantial justice done." We have repeatedly held that there would be no occasion for a zoning law if financial considerations were to control the action of a board in granting a variance. *Misuk* v. *Zoning Board of Appeals,* 138 Conn. 477, 481, 86 A.2d 180; *Devaney* v. *Board of Zoning Appeals,* 132 Conn. 537, 542, 45 A.2d 828; *Thayer* v. *Board of Appeals,* 114 Conn. 15, 23, 157 A. 273. Neither can increased inconvenience to Cott be considered material. *Rommell* v. *Walsh,* 127 Conn. 272, 277, 16 A.2d 483. This is not a case where zoning practically destroys the value of the property for any permitted use, nor does it amount to confiscation. *Devaney* v. *Board of Zoning Appeals,* supra. The truth is that the Cott business site was acquired as a nonconforming use. The area to which this action appertains was purchased with the knowledge that a part of it was in a business zone and a part in residence B zone

and could not be used for the purposes now sought. In fact, the Cott plant has outgrown its location and has expanded from a $200,000 to a $1,000,000 business, and whatever hardship there may be upon Cott results from this growth rather than from the enactment of the zoning ordinance. In other words, it is a change in Cott's condition which has created the hardship rather than the provision of the ordinance. This is not sufficient. *Misuk* v. *Zoning Board of Appeals,* supra; *Celentano* v. *Zoning Board of Appeals,* 136 Conn. 584, 587, 73 A.2d 101; *Piccolo* v. *West Haven,* 120 Conn. 449, 455, 181 A. 615; *Greenwich Gas Co.* v. *Tuthill,* 113 Conn. 684, 694, 155 A. 850. Incidentally, any traffic situation that Cott complains of is more a creation of Cott's than from normal highway traffic and concerns the internal yard movement of Cott rather than the movements of the public.

Not only is the granting of the variance unwarranted because no hardship exists but it is prohibited because it is not "in harmony with [the] general purpose and intent" of the zoning ordinance. It is of the essence of the purpose and intent of the ordinance as a whole to reduce and ultimately extinguish nonconforming uses rather than extend them. *Piccolo* v. *West Haven,* supra, 453; *Chudnov* v. *Board of Appeals,* 113 Conn. 49, 57, 154 A. 161. The granting of this petition would result in enlarging the scope of the nonconforming industrial use now enjoyed by Cott rather than in reducing the use to conformity. It is my opinion that the action of the board in granting the petition abused a reasonable discretion and that its decision was based upon a mistake or misconception of the law in the construction of § 1033(7) as to hardship and therefore was illegal. Furthermore, the variance granted is contrary to the provisions of § 1033(7) in that it would not be "in harmony with

[the] general purpose and intent [of the ordinance] so that the public health, safety and general welfare may be secured and substantial justice done."

I believe there was error and that the judgment should be set aside and the case remanded with direction.

In this opinion INGLIS, C. J., concurred.