SCHEUTZ v. DOSSEY LUMBER CO.

No. 31737. April 10, 1945.

Rehearing Denied May 22, 1945.

*158 P. 2d 720.*

Eben L. Taylor, of Tulsa, for plaintiff in error.

Kavanaugh Bush, G. Ellis Gable, and Chas. P. Gotwals, Jr., all of Tulsa, for defendant in error.

BAYLESS, J. This appeal from the district court of Tulsa county, Okla., involves the correctness of the order of that court sustaining an order of the board of adjustment varying the zoning ordinances of the city of Tulsa on the application of Dossey Lumber Company over the protest of T. J. Scheutz. The two lots involved are lot 3 in block 5 and lot 4 in block 6, White City addition to the city of Tulsa. The recorded plat shows that lot 3 has a frontage of 144.47 feet and a depth of 140 feet. It appears from the plat that something like 32 feet may already have been taken off of this lot, and the figures in the judgment entered by the court involve only 112.47 feet of the frontage. It was proposed and allowed to make two building sites on this lot, one having a frontage of 56.27 feet and the other having a frontage of 56.20

feet, with a depth of 140 feet. According to the recorded plat, lot 4 has a frontage on the street of 135.5 feet and on the rear of 180 feet and a depth of 140 feet. It appears from the plat that something like 15.5 feet on the street and 53.8 feet on the rear may already have been taken off of the east side of said lot and the figures in the judgment entered by the court involve only a frontage on the street of 120 feet, and on the rear of 126.2 feet. It was proposed and allowed to make two building sites on this lot, each having a frontage on the street of 60 feet and on the rear of 63.1 feet. It is conceded that the zoning ordinance of the city of Tulsa, which is treated by the parties as valid, defines a lot as being equal to the lines shown on the recorded plat, and that in this particular area, which is restricted for residential purposes, only one dwelling shall be built on each lot. There is another section of the zoning ordinance which attempts to restrict dwellings to one for each 7,000 square feet, but an exception to this is recognized as to lots having more than 10,500 square feet, on which a two-family dwelling may be built. Dossey tacitly recognized the binding effect of these provisions and applied directly to the board of adjustment to vary the provisions of the zoning ordinance, under the authority of this portion of the zoning ordinance:

"Where there are particular difficulties or unnecessary hardships in the way of carrying out the strict law of the provisions of this Ordinance, the Board of Adjustment shall have power in specific cases to vary any such provision in harmony with the general purpose and intent so that the public health, safety, convenience, prosperity and general welfare may be secured and substantial justice done."

Scheutz appealed from the order of the board of adjustment, and on trial de novo the district court sustained the order appealed from. The case was tried largely upon stipulation of facts and evidence introduced at the hearing of a prior appeal.

Dossey's position in the lower court and here is largely based on these two

points: (1) It is more profitable to him to build two houses on the building sites above described than it is to build one, especially in view of the fact that wartime restrictions may somewhat limit the value of a single house to be built on the lot; and (2) that splitting of lots and building of more than one house on split lots is so prevalent in this addition as to make a denial of his application discrimination or undue hardship. On the other hand, Scheutz contends that neither position comes within the literal or reasonable interpretation of the language above quoted, "particular difficulties" or "unreasonable hardships."

The evidence introduced includes a list of building permits on split lots in this addition, including the particular blocks in question, which contains a summary stating that 61 permits have been issued for building on split lots since 1930 when the addition was taken into the city. Another exhibit on a different form contains the summary that of the original 295 lots in this addition, 84% have been split, and that 64% of the original 295 lots have been developed. The judgment entered by the lower court sustaining the order of the board of adjustment specifically found as follows:

". . . that in the blocks on which each of the tracts are located, houses have heretofore been constructed without regard to the use of the lot according to the recorded plat as to building site, and that building sites have been used having a frontage of from 50 to 60 feet, and that to refuse Dossey Lumber Company to build on the parcels of land hereinafter described would be to discriminate against it and that substantial justice will be done in granting the application. . . ."

The rule that is applicable to the consideration on appeal of records and orders such as these is stated in Beveridge v. Westgate Oil Co., 171 Okla. 360, 44 P. 2d 26, to be that such orders will not be reversed unless the judgment is clearly against the weight of the evidence. It is to be observed that the trial court's specific finding does not contain the language of either of the two grounds for varying the ordinance. The language of the judgment is not susceptible of covering the first contention made by Dossey but would seem to apply directly to the second ground. It would seem also that the language used by the court would not fit into any interpretation applicable to "particular difficulties." It might, with reason and logic, be applicable to "unnecessary hardships" on the theory that discrimination amounts to an unnecessary hardship.

There are cases, and Scheutz cites them, including Anderson-Kerr, Inc., v. Van Meter, 162 Okla. 176, 19 P. 2d 1068, to the effect that other variations in the same vicinity, whether with or without official sanction, do not set a precedent for another person obtaining permission to vary the application of the ordinance. It is to be noted, however, that these cases coincide with the other cases cited by Scheutz, including Van Meter v. H. F. Wilcox Oil & Gas Co., 170 Okla. 604, 41 P. 2d 904, to the effect that the power to vary zoning ordinances on application should be sparingly exercised, and that the grounds specified in the ordinance for varying its application should be applied so as to carry out the general purpose underlying any zoning act.

Upon consideration of this entire record we are of the opinion that the trial court properly was impressed with the complete lack of adherence to the platted descriptions in this addition so that at the time Dossey Lumber Company applied, as it was obliged to do because it could not obtain permission otherwise, for permission to vary that a substantial majority of the other property owners had varied the application of the ordinance but were objecting to the others so doing. The fact situation which faced the trial court was such as to justify it in finding and holding that whatever had been the original general zoning purpose governing this addition, it had been so habitually ignored or consistently officially varied that it was

no longer applicable to anyone who could make a reasonable showing, as Dossey did in this case. It developed in the course of the evidence, and the trial court seemed to have attached significance thereto, that there was no restriction upon the cost of buildings to be built in this area, and for this reason it would be difficult to maintain what Scheutz contended was the underlying purpose, a restricted substantial residence neighborhood, because, even if a person could not build more than one building on a platted lot, he was, insofar as the plat restrictions were concerned, free to build a $500 or a $50,000 building.

We are unable to say that the order and judgment appealed from are clearly against the weight of the evidence. The judgment appealed from is affirmed.

GIBSON, C.J., HURST, V.C.J., and RILEY, OSBORN, WELCH, CORN, and DAVISON, JJ., concur.